UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

MAR 03 2026

PER_____
DEPUTY CLERK

1:26-CV-527

RALPH ROMAN, JR.,
Plaintiff,

v.

MATTHEW McCANN, in his individual capacity and in his official capacity for prospective relief,
PENNSYLVANIA PAROLE BOARD,
TRIAD TREATMENT SPECIALISTS, INC.,
and JOHN/JANE DOES 1–5,
Defendants.

Civil Action No. _____

JURY TRIAL DEMANDED

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(42 U.S.C. § 1983)

## I. JURISDICTION

1.    This action arises under the Constitution and laws of the United States, including the First, Fourth, and Fourteenth    Amendments and 42 U.S.C. § 1983.

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

3.    Plaintiff seeks declaratory, injunctive, and monetary relief for completed and ongoing violations of federally protected rights.

4.    Plaintiff seeks prospective declaratory and injunctive relief against state officials pursuant to Ex parte Young, and damages against Defendants sued in their individual capacities.

## II. VENUE

5.    Venue is proper under 28 U.S.C. § 1391(b)(1)–(2) because Defendants reside in this District and a substantial part of the events giving rise to the claims—including parole supervision, Interstate Compact processing, treatment-provider actions, violation proceedings, and Plaintiff's reincarceration on February 27, 2024—occurred within this District.

6.    Venue is further proper because parole supervision was administered from offices located in this District and unconstitutional conduct was directed into this District.

## III. PARTIES

7.    Plaintiff Ralph Roman, Jr. is a resident of Illinois and was, at all relevant times, under parole supervision

1

administered by the Commonwealth of Pennsylvania.

8. Defendant Matthew McCann was a parole agent employed by the Commonwealth of Pennsylvania and acted under color of state law. He is sued in his individual capacity for damages and in his official capacity solely for prospective relief.

9. Defendant Pennsylvania Parole Board is a state agency responsible for parole supervision policy and training. It is sued solely for prospective declaratory and injunctive relief pursuant to Ex parte Young, 209 U.S. 123 (1908).

10. Defendant Triad Treatment Specialists, Inc. is a state-approved treatment provider whose services parolees were required to attend as a condition of supervision. At all relevant times, Triad acted jointly with parole officials and under color of state law.

11. Defendants John/Jane Does 1–5 are unknown parole officials, supervisors, administrators, or Triad employees who participated in or ratified the conduct alleged herein. Plaintiff will amend this Complaint when their identities are discovered.

## IV. FACTUAL ALLEGATIONS

### A. Retaliatory Pattern of Supervision

12. McCann engaged in a sustained course of punitive supervision after Plaintiff exercised protected rights, including seeking interstate transfer, objecting to searches, requesting written justification for conditions, contacting supervisors, and pursuing judicial remedies.

13. McCann obstructed Plaintiff's Interstate Compact Transfer ("ICOT"), escalated supervision through repeated searches, interfered with family relationships, and initiated proceedings resulting in reincarceration.

14. McCann personally approved, initiated, or ratified each challenged enforcement action, including family-contact restrictions, search decisions, ICOT delays, and the February 27, 2024 violation proceedings.

15. These actions constituted a continuous course of conduct rather than isolated mistakes.

### B. Interstate Compact Interference

16. Plaintiff submitted an ICOT request in or about July 2023.

17. McCann represented that the process would take several months.

18. McCann failed to transmit required paperwork for more than eight months and falsely attributed responsibility to another unidentified agent.

19. Supervisory officials were notified and failed to correct the delay.

### C. Warrantless Searches and Detentions

20. After Plaintiff raised complaints, McCann conducted multiple searches of Plaintiff's person and residence.

21. Plaintiff was detained or handcuffed during these encounters.

22. No warrants were obtained.

23. No violations were discovered.

24. These searches were unreasonable and retaliatory.

D. Forced Familial Separation

25. In late 2022, McCann verbally ordered Plaintiff to cease all contact with Susannah Roman—Plaintiff's former spouse, the mother of his four children, and his fiancée at the time—on the asserted ground that she was a "victim," despite the absence of:

   a. parole-board authorization;
   b. protective orders;
   c. criminal investigations;
   d. documented risk assessments;
   e. articulated public-safety findings.

26. Plaintiff objected.

27. After Plaintiff demanded documentation, McCann issued written directives allowing only limited phone contact with Plaintiff's children and restricting any contact with Ms. Roman—other than through counsel—to legal matters.

28. Plaintiff was warned that continued contact would result in incarceration.

29. These restrictions were imposed without notice, hearing, or lawful authority.

**E. Treatment Discharge and Reincarceration**

30. Plaintiff was required to attend treatment at Triad as a parole condition.

31. Triad evaluated compliance and reported alleged violations to parole officials.

32. Triad communicated Plaintiff's discharge to McCann.

33. Plaintiff immediately sought enrollment in another approved program.

34. McCann refused to permit cure and initiated violation proceedings.

35. Plaintiff was reincarcerated on February 27, 2024.

36. Triad's actions and McCann's reliance upon them were a proximate cause of Plaintiff's loss of liberty.

**F. Enforcement-Adjacent Coordination Between Triad and Parole**

3

37. Triad routinely communicated with parole officials regarding participants subject to supervision, including Plaintiff.

38. Triad and parole officials held recurring meetings concerning treatment participation, discharge decisions, and enforcement referrals.

39. Topics discussed were not disclosed to Plaintiff, and no transparent process existed to contest representations made to parole authorities.

40. Through these recurring interactions, Triad functioned in an enforcement-adjacent role rather than as a purely therapeutic provider.

41. Triad understood that its reports and discharge determinations would foreseeably trigger parole-enforcement actions, including reincarceration.

42. McCann and other parole officials relied upon those communications when deciding to initiate violation proceedings.

43. This coordination rendered Triad a willful participant in joint state action.

## G. Refusal to Provide Explanation Following Family Inquiry

44. Plaintiff's former spouse and fiancée, Susannah Roman, contacted Triad to challenge the family-contact restrictions and enforcement actions.

45. Triad refused to explain its conclusions or communications with parole authorities.

46. McCann likewise refused to provide justification, documentation, or any avenue for review.

47. No written findings, risk assessments, protective orders, or board directives were produced.

48. These refusals preceded the escalation of enforcement actions.

49. The parallel refusal deprived Plaintiff of notice and meaningful opportunity to be heard.

## H. Continuing Violation Doctrine

50. Defendants' conduct escalated from verbal directives to written restrictions, ICOT obstruction, searches, and incarceration.

51. Unconstitutional practices continued into 2024.

52. Plaintiff's claims accrue from the most recent enforcement act.

## V. POLICIES, CUSTOMS, AND RATIFICATION

53. Defendants maintained policies or customs permitting:

a. family-contact restrictions without board approval;
b. reliance on treatment discharge without independent review;
c. denial of cure opportunities;
d. retaliation following grievances;
e. searches absent individualized suspicion;
f. ICOT obstruction.

54.    Supervisory officials were placed on notice and failed to intervene.

55.    Triad maintained institutional reporting and discharge practices that foreseeably resulted in incarceration without constitutionally adequate safeguards.

56.    These customs and failures constituted deliberate indifference and moving forces behind Plaintiff's injuries.

## VI. CLAIMS FOR RELIEF
### COUNT I — First Amendment Retaliation

57.    Plaintiff engaged in protected activity.

58.    Defendants imposed adverse actions in response.

### COUNT II — First Amendment Familial Association

59.    Defendants interfered with Plaintiff's relationships with the mother of his children and his fiancée.

### COUNT III — Fourth Amendment

60.    Defendants conducted unreasonable searches and seizures.

### COUNT IV — Fourteenth Amendment Procedural Due Process

61.    Defendants imposed restrictions and incarceration without hearing or cure opportunities.

62.    Defendants refused to provide explanations when challenged.

### COUNT V — Substantive Due Process

63.    Defendants engaged in arbitrary and conscience-shocking conduct.

### COUNT VI — Supervisory and Policy Liability

64.    Supervisors ratified unconstitutional practices.

## VII. INJUNCTIVE AND DECLARATORY RELIEF

65.    Plaintiff remains subject to parole supervision.

66.    Plaintiff seeks orders prohibiting:

a. unauthorized family-contact restrictions;

b. retaliatory supervision;

c. denial of cure opportunities;

d. unconstitutional searches.

67.    Plaintiff further seeks injunctive relief requiring Triad to implement constitutionally adequate reporting and transparency safeguards before enforcement referrals.

68.    Plaintiff seeks declaratory judgment that Defendants violated the Constitution.

## VIII. DAMAGES

69.    Plaintiff suffered loss of liberty, emotional distress, family disruption, reputational injury, and financial harm.

70.    Plaintiff seeks compensatory damages to be determined by a jury.

71.    Plaintiff seeks punitive damages against individual defendants.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and appropriate relief including declaratory and injunctive relief, compensatory and punitive damages, costs, attorney's fees under 42 U.S.C. § 1988, and any further relief deemed just.

## X. JURY DEMAND

Plaintiff demands trial by jury.

## VERIFICATION

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

/s/ Ralph Roman, Jr.
Ralph Roman, Jr.
Plaintiff, Pro Se
21 165th Street
Calumet City, IL 60409
Telephone: 630-561-9338
Email: ralphromanjr65@gmail.com

Date: _____, 2026

6

PRESS FIRMLY TO SEAL

PRIORITY MAIL EXPRESS
FLAT RATE ENVELOPE
POSTAGE REQUIRED

# PRIORITY
# MAIL
# EXPRESS®

## FLAT RATE
## ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP


PS10001000006

EP13F October 2023
QD: 12 1/2 x 9 1/2

RECEIVED
HARRISBURG, PA

MAR 0 3 2026

PER _____
DEPUTY CLERK

*Suite 101*

This package is made from post-consumer waste. Please recycle - again.



UNITED STATES
POSTAL SERVICE.

**Retail**

E

**US POSTAGE PAID**

**$33.25**

Origin: 60438
02/25/26
1643260438-06

**PRIORITY MAIL EXPRESS®**

RALPH ROMAN JR
21 185TH ST
CALUMET CITY IL 60409-6203
(630) 561-9336

0 Lb 8.30 Oz

RDC 07

SCHEDULED DELIVERY DAY: 02/26/26 06:00 PM

C028

SHIP
TO:



UNITED STATES DISTRICT COURT
1501 N 6TH ST
HARRISBURG PA 17102-1104

**USPS TRACKING® #**



9570 1108 8108 6056 9895 82

PRIORITY MAIL EXPRESS
FLAT RATE ENVELOPE
POSTAGE REQUIRED

ONAL USE
ERE

omestic

surance

ding

BE REQUIRED.

PAPER
POUCH

UNITED STATES
POSTAL SERVICE.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2023; All rights reserved.